WALKER and others, Respondents, vs. THE GRAND RAPIDS FLOURING MILL COMPANY, Appellant.

*November 2 — November 22, 1887.*

**Fixtures: Estoppel: Chattels intrusted to another and sold by him: Corporations: Agency: Notice.**

1. Machinery placed in a mill does not become a part of the realty if it is not so incorporated with the building as to lose its identity or to render it difficult or injurious to the building to remove it, and the person placing it in the building did not intend to make a permanent accession to the freehold.

2. The plaintiffs consigned a machine to themselves in care of one P., for the sole purpose of having it tested in the mill of N. P. sold the machine to N. and placed it in his mill, where it stood upon legs, attached to the floor by screws, and connected by belts and pulleys with the main shafting of the mill. N. knew that the machine had been consigned to the plaintiffs in care of P., and did not pay P. therefor or do any other act on the faith of P.'s ownership before the plaintiffs informed him that they owned the machine. Afterwards N. sold the mill and its appurtenances to the defendant corporation, of which he was secretary and business manager. *Held:*

(1) The machine did not become part of the realty.

(2) The plaintiffs were not estopped to assert their ownership.

(3) Notice to N. of plaintiffs' ownership was notice to the corporation.

APPEAL from the Circuit Court for *Monroe* County.

This is an action in the nature of trover, brought by the plaintiffs, who were copartners, to recover the value of a machine known and described as a "Pomeroy First Reduction Roller Mill," which it is alleged the defendant unlawfully converted to its own use. The answer admits that the plaintiffs were copartners and that the defendant is a corporation as stated in the complaint, and denies all the other allegations in the complaint. The cause was tried

by the court without a jury.    The facts are substantially as follows:

The firm of Neeves & Podawitz was the owner of a flouring-mill at Grand Rapids.    In April, 1883, this firm entered into a contract with one Pomeroy, in and by which, for a consideration therein named, Pomeroy agreed to change and convert the flouring-mill of the firm into a first-class mill, with a specified capacity to manufacture flour, and to that end to put in said mill a large quantity of machinery particularly specified in the contract, among which was "one first-break Pomeroy machine," which is the same machine, under a different name, described in the complaint. The plaintiffs had just commenced the manufacture of that machine at Madison, Wisconsin, and sent one of the machines to Grand Rapids, consigned to themselves in the care of Pomeroy.

The testimony on the part of the plaintiffs is that they so sent the machine for the purpose of having it tested by Pomeroy in the mill of Neeves & Podawitz.    Pomeroy put the machine in position for use.    It stood on four legs, and was attached by screws to the floor, and connected by belts and pulleys to the main shafting by which the machinery in the mill was operated.    That about three weeks after such consignment, *Mr. Ball*, one of the plaintiffs, went to Grand Rapids, and had an interview with Neeves in relation to the machine, informing him of the purpose for which it was sent, and that the same had not been sold to Pomeroy. The parties came to no understanding about the machine,— Neeves insisting that he had purchased it of Pomeroy; *Mr. Ball* insisting that the machine was the property of the plaintiffs.    After another and later interview between two of the plaintiffs, *Mr. Ball* and *Mr. Main*, and Mr. Neeves, which led to no results, the plaintiffs made a formal demand for the machine, and, the same not being delivered to them, they brought this action to recover its value.

It should be stated that, soon after the first interview between *Ball* and Neeves, the defendant corporation was organized, and the mill and its appurtenances were conveyed to it by Neeves & Podawitz. Neeves was the secretary and manager of the business of the corporation.

The court found as facts that, at the time of such demand, the plaintiffs were, and ever since have been, and now are, the lawful owners of the machine in controversy and entitled to the possession thereof, and that ever since that time the defendant wrongfully converted the same to its own use and detained it from the plaintiffs. The court also assessed the plaintiffs' damages at $231.32, and gave them judgment against the defendant therefor, with costs. The defendant appeals from the judgment.

For the appellant there was a brief by *Bleekman, Tourtellotte & Bloomingdale,* and oral argument by *Mr. Bleekman* and *Mr. Bloomingdale.* They contended, *inter alia,* that where the nature of the article affixed to the realty, the relation and situation of the party making the annexation, and the purpose and use for which the annexation was made show the intention to have been to make it a permanent accession to the freehold, it becomes a part of the realty. Ewell on Fixtures, 22, and note 3; *Potter v. Cromwell,* 40 N. Y. 287; *Coleman v. Stearns Mfg. Co.* 38 Mich. 30; *Tyle v. Palmer,* 42 id. 314; *Ward v. Kilpatrick,* 85 N. Y., and note; *Ridgway S. Co. v. Way,* 25 id. 660 and note; *Taylor v. Collins,* 51 Wis. 123; *Stockwell v. Campbell,* 39 Conn. 362; *Winslow v. Merchants' Ins. Co.* 4 Met. 306. The annexation of the machinery to the mill having been made by Pomeroy, and the defendant having exercised no authority or control over it until after it had become a part of the realty, the action of trover will not lie against the defendant. *W. & B. Iron Works v. Adams,* 37 Conn. 233; *Fryatt v. Sullivan Co.* 5 Hill, 116; *S. C.* 7 id. 529; *D. & B. C. R. Co. v. Busch,* 43 Mich. 571; *Knowlton v. Johnson,* 37

Walker and others vs. The Grand Rapids Flouring Mill Co.

id. 47; *Morrison v. Berry*, 42 id. 389; *Peirce v. Goddard*, 22 Pick. 559; *Frankland v. Moulton*, 5 Wis. 1; *Huebsch-mann v. McHenry*, 29 id. 655; *Graham v. C. & N. C. J. R. Co.* 10 Am. Rep. 56.

For the respondents there was a brief by *Rogers & Hall*, and oral argument by *Mr. Hall*. They argued, among other things, that there can be no claim that the machinery is so annexed to the mill that its identity is lost; and unless there is something in the relation of all the parties to this transaction which ought to stamp the nature of realty upon this machinery it must be considered as personalty. *Murdock v. Gifford*, 18 N. Y. 28; *Potter v. Cromwell*, 40 id. 287; *Taylor v. Collins*, 51 Wis. 123. Since Pomeroy had no title to the machine, he could not annex it to the realty as against the plaintiffs to the advantage of the defendant who purchased with full knowledge of the plaintiffs' rights. Ewell on Fixtures, 22; *Taylor v. Collins*, 51 Wis. 123; *Crippen v. Morrison*, 13 Mich. 35; *Sheldon v. Edwards*, 35 N. Y. 279; *Taft v. Stetson*, 117 Mass. 471; *Davenport v. Shants*, 43 Vt. 546; *Hunt v. B. S. I. Co.* 97 Mass. 282; *Pierce v. George*, 108 id. 78; *Tifft v. Horton*, 53 N. Y. 377; *Mott v. Palmer*, 1 id. 572.

LYON, J. The evidence is undisputed that the plaintiffs never sold or contracted to sell the machine in controversy to Pomeroy or any one else. It is claimed, however, on behalf of the defendant, that because they intrusted the machine to Pomeroy, and he placed it in the mill of Neeves & Podawitz under a contract to put such a machine in their mill, and because that firm had no notice or knowledge, until it was so placed, that Pomeroy was not the owner of it, the plaintiffs should be estopped to claim the machine as their own property. Were it true that Neeves & Podawitz, before they had notice that Pomeroy was not the owner of the machine, and believing him to be the owner, had

paid him therefor, or had they done any other act to their prejudice on the faith that Pomeroy was such owner, there would be great force in the claim thus made on behalf of the defendant. But such is not the case. When the machine was shipped to Grand Rapids it was consigned to the plaintiffs, and the firm knew that fact. This of itself was a circumstance which might well put the firm upon inquiry as to who was such owner. More than this, there is no testimony whatever tending to show that the firm ever paid Pomeroy any money, or did any act whatever, or in any manner changed their position on the faith that Pomeroy owned the machine, before they were notified to the contrary. It may be observed here that the testimony on this question of notice was conflicting; but manifestly the court found that such notice was given, as testified to by *Mr. Ball.* Notice to Neeves operates as notice to the defendant corporation, whose affairs were managed by Neeves from its organization, and of which he was an officer. We conclude, therefore, that the plaintiffs are the owners of the machine, and may recover its value in this action unless some disposition has been made thereof which will defeat them. The principal ground upon which it is claimed that such a disposition has been made is that it has been so annexed to the mill as to become a permanent fixture, and therefore part and parcel of the freehold.

In *Taylor v. Collins,* 51 Wis. 123, Mr. Justice ORTON lays down the following rules or tests for determining whether articles of machinery are fixtures: "(1) Actual physical annexation to the realty; (2) application or adaptation to the use or purpose to which the realty is devoted; (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold." In the present case, the requirement of the third rule is entirely wanting. The machine was not furnished to Pomeroy by the plaintiffs to be made a permanent accession to the free-

hold, unless some person interested should thereafter pur-
chase it, and there is no evidence that Pomeroy had any
such intention.  He had no right to make the same a per-
manent accession to the freehold, and the legal presumption
is that he did not.   The fact that it was attached in the
manner above stated to the building and freehold is not
significant.   It was not so incorporated with the building
as to lose its identity or to render it difficult or injurious to
the building to remove it.

In the case of *Second Nat. Bank v. O. E. Merrill Co.*
69 Wis. 501, it was held that a large amount of machinery
in a foundry building, indeed all the machinery therein
over and beyond the water-wheel, much of which was
attached to the building more extensively and firmly than
was the machine in controversy here, were not permanent
fixtures, but personal property, which the tenant who
placed the machinery there had a right to remove.   This
case illustrates of how little importance the mere fact of
attachment to the freehold is, so long as the identity of the
property remains, and its capacity to be removed and used
elsewhere.   The principal consideration in such cases is the
intention of the party putting in the machinery.

Counsel for the defendant greatly rely upon the case of
*Woodruff & B. Iron Works v. Adams,* 37 Conn. 233.   An
examination of that case shows that it was decided upon
the ground that the property in controversy was so attached
to the building as to lose its identity.   The same is true of
the case of *Fryatt v. Sullivan Co.* 5 Hill, 116, affirmed by
the court of errors, 7 Hill, 529, also relied upon by counsel
for defendant.   The principle of these cases will apply
where boards, timber, brick, or stone are incorporated in a
building.   They necessarily become a part of the building,
and thus lose their identity as personal property.   It should
be observed that in both the above cases the owners of the
freehold had paid their vendor or contractor for the articles

thus made fixtures, in good faith and without notice that such articles belonged to other parties.

The case of *Detroit & B. C. R. Co. v. Busch*, 43 Mich. 571, as well as many other cases cited to the same proposition, belongs to this class. In the latter case it was held that the ties used in the building of a railroad thereby lost their identity as personal property, and an action for their conversion could not lie. Other cases are cited on behalf of the defendant, in which the judgments were controlled by the consideration that the owners of the buildings in which the machinery in controversy had been placed by contractors had paid therefor in good faith, believing that such contractors owned the machinery, when in fact they did not. We have already seen that this is not such a case.

The foregoing considerations lead us to the conclusion that the machinery in question in this case remained the personal property of the plaintiffs, and that they are entitled to recover therefor in this action.

*By the Court.*— The judgment of the circuit court is affirmed.

See notes to this case in 35 N. W. Rep. 332, and 26 Cent. L. J. 372–5.— REP.

