MUELLER, Appellant, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*September 4 — September 24, 1901.*

*Landlord and tenant: Fixtures: Right of removal.*

Plaintiff, while employed by a railway company as section foreman and living by its permission in the section house, built a lean-to kitchen addition, attached to the house, with the knowledge and consent of the company. Afterwards the company papered and sided the outside of both the section house and the addition. *Held*, that the addition became a fixture which plaintiff could not remove after his discharge by the company and removal from the house.

APPEAL from a judgment of the circuit court for Pepin county: E. W. HELMS, Circuit Judge. *Affirmed.*

The cause was submitted for the appellant on the brief of *C. M. Hilliard*, and for the respondent on that of *Wm. E. Plummer*.

CASSODAY, C. J.    This is an action to recover damages for the wrongful conversion of a lean-to upon the section house of the defendant at Savoy, near Maxville station. Issue being joined and trial had, the court, at the close of the testimony on the part of the plaintiff, granted a nonsuit, and from the judgment entered thereon the plaintiff appeals.

The following facts appear from the record and are undisputed. In the spring of 1897 the defendant employed the plaintiff to work for it as section foreman on that section, with the understanding and agreement that the

plaintiff and his family should occupy the section house of the defendant at that place. Such section house was sixteen feet wide by twenty-six feet long, and one and one-half stories or twelve feet high, and situated upon blocks, and upon the land of the defendant, and about 150 feet from the main track, and had an addition to it at the time, which the plaintiff removed after he moved into the section house. While the plaintiff was so occupying such section house with his family, he did, with the knowledge and consent of the defendant, purchase lumber, and construct a small lean-to, for a kitchen, against said section house, at the cost and of the value of $67, and also with such knowledge and consent put in a pump of the value of $7. Such lean-to had two common, middle-sized windows of four lights each, and one door. The section house had boards up and down, and the plaintiff nailed a 2x4 piece of lumber on the section house, and fastened the lean-to to that. The floor was a double floor, and matched, and overhead there was single pine flooring, matched, and the inside was ceiled up with flooring. After the section house and lean-to had remained in that condition for over two years, changes were made on the outside, and, while the plaintiff and his family were still occupying the same as tenant of the defendant, the defendant's bridge carpenters papered and sided the same as directed by the plaintiff, but so that the siding did not go further than the section house, leaving a seam between it and the lean-to. "After the plaintiff had placed the repairs and improvements on said section house in the manner aforesaid, and while he was living in said house, the defendant covered all the same with outside sheeting or lap-siding in the usual way, and thereby converted all the same to its own use and benefit, and prevented the plaintiff from removing all the same, as he intended to do in case the defendant did not buy the same

from him; and that, soon after the defendant had covered the lumber that the plaintiff had placed on its said building and put in said kitchen, it discharged him from its said employment." The plaintiff was so employed by the month for no stated time, and could quit whenever he pleased, and could be discharged at the pleasure of the defendant. He was discharged in the spring of 1900. After he and his family had moved away, the plaintiff asked the defendant's road master if he could not pay the defendant for the siding it had so placed upon the lean-to, and for the two days' work in putting it on, and then be allowed to take the lean-to away and remove it to Durand; but the road master replied that that would destroy or injure the building. The plaintiff paid no rent for so occupying the section house with his family, and never agreed to.

Upon the facts stated, it is obvious that the lean-to became a fixture on the premises of the defendant, within the principles of law repeatedly and recently stated by this court. *Gunderson v. Swarthout*, 104 Wis. 186, 190–192, and numerous cases there cited; *Fuller-Warren Co. v. Harter*, 110 Wis. 80, 85–92, and cases there cited. It was physically attached to the section house, and hence to the realty. It was adapted to the use and purpose to which the realty was devoted. It was the intention of the plaintiff, in constructing the same, that it should be so attached, and that it should be used in connection with the section house. There is no claim nor pretense that the defendant ever agreed that the plaintiff might remove the lean-to from the premises. Certainly, a tenant of a dwelling house, in possession under a lease which does not provide that he may remove fixtures placed thereon by him, cannot, after he has surrendered possession to his landlord, re-enter, and remove such fixtures, without permission of his landlord. *Yates v. Bachley*, 33 Wis. 185; *Fitzgerald v. Anderson*, 81 Wis. 341; *Keefe v. Furlong*, 96 Wis.

219; *Friedlander v. Ryder*, 30 Neb. 783; *Friedlander v. Hewitt*, 9 L. R. A. 700. We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.